# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> LESTER R. VÁZQUEZ-CINTRÓN (2) <br><br> Defendant. | CRIMINAL NO. 19-685 (PAD) |

## MEMORANDUM AND ORDER

Delgado-Hernández, District Judge.

Before the court is the "United States' Motion Requesting Stay of Release Order Pending *De Novo* Hearing" (Docket No. 18), defendant's "Motion in Support of Release of the Defendant with Conditions and in Compliance with Court Order" (Docket No. 39), and the government's "Response in Opposition to Defendant's Motion Requesting Relief on the Basis that his Pretrial Detention is Illegal" (Docket No. 41). For the reasons explained below, defendant shall be detained without bail pending trial.

## I.     BACKGROUND

On October 30, 2019, defendant, Lester R. Vázquez-Cintrón, was charged in this District with conspiracy to engage in the business of dealing in firearms without a license in violation of 18 U.S.C. § 371, and two substantive counts of engaging in the business of dealing in firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A) and § 2 (Docket No. 3, Counts One, Four, Five).[1] On November 4, 2019, the defendant was arrested in the Middle District of Florida and ordered detained pending detention hearing, which was set for November 7, 2019 (Docket No.

---

[1] Defendant was charged with co-defendant Indira Osorio Ortiz (Docket No. 3), a Puerto Rico Police Officer up until the day of her arrest.

24-4, Copy of the Order Scheduling Detention Hearing in 19-MJ-1793). The hearing was held as set before U.S. Magistrate Gregory J. Kelly, who granted bail, set conditions of release, and appointed a third-party custodian (Docket No. 24-5, Copy of the Order Setting Conditions of Release).[2]

On November 7, 2010, the government requested that the order granting release issued by the Magistrate Judge in the Middle District of Florida be stayed pending a *de novo* hearing (Docket No. 18). The motion was granted and the Magistrate Judge's order of release accordingly stayed (Docket No. 19). The hearing was set for February 11, 2020 (Docket No. 25) but upon defendant's request, continued for February 18, 2020 (Docket Nos. 27 and 28).

During the hearing, the government proceeded via proffer and requested detention (Docket No. 35). Defendant requested bail. Id. Both parties argued their positions. Id. The court ordered that defendant remain under custody pending further record review. Id. All things carefully considered, the court is persuaded that defendant should be detained without bail pending trial.

## II.  DISCUSSION

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141-3156, permits detention pending trial if no condition or combination of conditions will reasonably assure the appearance of the person as required or the safety of any other person and the community. 18 U.S.C. §§ 3142(b) and (e). The government must establish risk of flight by a preponderance of the evidence; and/or dangerousness by clear and convincing evidence. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001); United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir. 1991). Where probable cause is found to

---

[2] In preparing this Memorandum and Order, the court examined all documents received from the Middle District of Florida (Docket No. 24), the Pretrial Services Report prepared in that District, which was updated by the U.S. Probation Office of this District, following defendant's transfer to this jurisdiction, and a second interview in this District.

believe that a defendant has committed a crime listed or in the circumstances set forth in 18 U.S.C. § 3142(e), a rebuttable presumption arises that no conditions or combination of conditions exist that will reasonably assure the appearance of the defendant and the safety of the community.

This is not a presumption case, for the offense is not listed in 18 U.S.C. §§ 3142(e)(2) and (3), as an offense to which the detention presumption applies. But the statute authorizes pretrial detention in cases that involve a felony that is not otherwise a crime of violence that involves the possession or use of a firearm or destructive device (as those terms are defined in Section 921), or any other dangerous weapon. See, 18 U.S.C. § 3142(f)(1)(E). And in making a detention determination, the court must consider the nature and circumstances of the offense charged, in addition to the weight of the evidence against the defendant, the history and characteristics of the defendant, and the danger to any other person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). Review of a magistrate judge's release order is *de novo*. See, United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990).

1. Nature and Circumstances of Offense

The facts underlying the charge are serious. The government proffered that the defendant – who is not a licensed dealer of firearms – caused to be delivered a total of three firearms to a person identified in the Indictment as "Individual A" (Docket No. 18, p. 1) and offered a confidential source two fully automatic weapons for $3,500. See, Transcript of *De Novo* hearing held before the undersigned on February 18, 2020 at p. 1.[3] These crimes were allegedly committed in concert with a police officer, co-defendant here.

---

[3] District Judges have Court Reporters as part of their staff when presiding over the different proceedings held before them. Among other responsibilities listed in 28 U.S.C. § 753, reporters are responsible for promptly transcribing, when requested, the original record of all proceedings held before the judge and prepare and file a certified transcript of the same. The transcript is available, following applicable rules and regulations, to parties who have arranged payment. Additionally, it is available at the request of a judge, at no charge to the court. District Judges have access to the rough drafts of the transcripts before a formal request is made

Further, (i) approximately one week after offering the two automatic weapons, defendant offered to sell three additional automatic weapons to the confidential source; (ii) based on recorded conversations, defendant had access to firearms both directly and through intermediaries; (iii) on the date of his arrest, FBI agents searched defendant's residence with his consent, finding two pistols which the defendant told the FBI agents he intended to give to the co-defendant, an assault rifle, a fully loaded Uzi, and a loaded Smith & Wesson revolver; (iv) at the hearing in Florida, defendant's consensual partner acknowledged that there were two additional firearms in the residence, which the defendant failed to inform the FBI about; and (iv) defendant has criminal associates in the free community with access to firearms and controlled substances (Docket No. 18 at pp. 2-3; Transcript at 2-3). If convicted, the defendant faces up to 15 years of imprisonment (a maximum of five years per count).[4]

The offense charged, the underlying circumstances, and the sentencing exposure favor detention. See, United States v. Tyson, 2008 WL 4415298, *3 (D.V.I. September 23, 2008) (describing Section 922(a)(1)(A) offense as serious, as the unlicensed dealing in firearms facilitates criminal access to guns and can increase violent crime); United States v. Rocha, 2019 WL 4384465, *4 (N.D.Ill. September 11, 2019)(collecting cases illustrating the court's recognition that the communities are put at risk by the unlawful trafficking of firearms into the hands of unknown persons outside the regulatory framework – be it federal, state or local – of firearms ownership).

---

by any interested party, or the transcript is filed for the record in the court.

[4] For present purposes, the court is entitled to rely on maximum statutory terms of imprisonment. United States v. Moss, 887 F.2d 333, 338 (1st Cir. 1989).

2. Weight of Evidence

Based on the proffer, defendant does not have a license to deal in firearms (Transcript at p. 5).[5] There are recordings of defendant discussing transactions with the confidential human source, and text messages and audio messages on his phone discussing gun transactions. Id. at pp. 3-4. Firearms were recovered from his residence at the time of his arrest. And in consensually recorded telephone calls, defendant referred to some of his criminal associates and sought to coordinate the movement of kilogram-quantities of cocaine from Vieques to Puerto Rico (Docket No. 18 at p. 3). Thus, the weight of the evidence favors detention.

3. History and Characteristics of the Defendant

First, defendant is 45 years of age (Updated Pretrial Services Report, p. 1). He moved to the Middle District of Florida after Hurricane María. His consensual partner, Ana Milagros Rivera-López, who is a medical doctor, purchased the residence in Kissimmee, Florida in August of 2018. Before moving to Florida, defendant was a lifelong resident of the District of Puerto Rico. He has one sibling but reported in the original interview with Pretrial Services to having a deceased brother and five sisters, one of which is a resident of Florida, while the others reside in Puerto Rico. Id. at pp. 1-2. In 2002, he married Rivera-López with whom he has no children. In December 2003, the couple divorced to limit the exposure of their individual assets but remained in a consensual relationship. On unspecified dates, defendant had a consensual relationship with Erica Ramírez, the mother of his now 21-year old son, who is a college student in Florida. Id. at p. 2.

---

[5] At Docket No. 39, defendant claimed that because of his business and because he is a private detective, he had a permit to carry weapons in Puerto Rico. See also, Docket No. 39, Exh. 2. However, it remains uncontested that he does not have a license to engage in the sale of guns, or possession of machine guns. See, Transcript at p. 5.

Second, defendant approved the General Education Exam (GED) at age 16, and subsequently enrolled in a pre-medical program at Universidad del Turabo in Puerto Rico but abandoned his studies to commence an ambulance business. Id. He is fluent in English as a second language. His primary tongue is Spanish. Id. At the time of his arrest, he was not working because of a traffic accident in which he suffered extensive trauma in his back, limbs, and neurological system. Prior to that date, he owned and operated an ambulance service, and had prior employment history as an emergency medical technician, and in search and rescue operations. Id. at p. 2.

Third, as to prior record, defendant was arrested in 1997 for illegal possession of stolen goods and illegal vehicular appropriation, but no probable cause was found. Id. at p. 4. He was arrested again in 2005 for unlicensed possession of a firearm, and firing or brandishing firearms, but was acquitted in 2006. Id. At the *de novo* hearing, he submitted some letters attesting to his character. Defendant's history and characteristics favor release.

4.  The Danger Posed to the Community by Defendant's Release

Defendant contends that several factors weigh in favor of bail and in support of the conclusion that he is not a danger to the community. He claims that: (i) he is a reputed member of the Puerto Rico paramedics and health services community; (ii) after he was ran over by a truck, he has been receiving medical treatment, can barely move his right wrist, and part of the right side of his body is suffering, and because this condition has worsened since he has been under the custody of the BOP, he should be granted bail to continue with his medical treatment; (iii) he has family support – his wife is willing to serve as his third-party custodian; (iv) several members of the community vouched for his good nature and willingness to help people since he was 16 years old; and (v) he has devoted his whole life to help others and assist in disaster relief (including participation in different search and rescue efforts like the one following the 9-1-1 terrorist attack

in New York, the Humberto Vidal explosion in Puerto Rico, and another explosion in Bayamón, Puerto Rico). Id. at pp. 7-11. Also, he offered a variety of restrictive conditions to help mitigate any risk of non-appearance, including reinstating the conditions set by the Magistrate Judge in Florida. Id. at pp. 11 and 12.

The court is aware of the conditions set by the Magistrate Judge in Florida to help mitigate defendant's risk of non-appearance and danger to the community. While those conditions could – to some extent – mitigate his risk of non-appearance, the court does not believe they would do so in connection with danger to the community, a serious issue here. Given the nature of the charges in light of the government's proffer, defendant's release pending trial would pose a substantial risk to the safety of the community. See, Tyson 2008 WL 4415298 at *3 ("Those who sell guns illegally [. . . .], cause great harm to the community. If Tyson is released on bail, he may continue to facilitate the influx of dangerous firearms into the community. Those weapons may end up hurting members of the community").

### III.  CONCLUSION

Having carefully considered all evidence as well as the available range of release conditions, the court concludes that the government has shown, by clear and convincing evidence, that no condition or combination of conditions will assure the safety of the community if defendant were released. The nature and circumstances of the offenses charged, including potential penalty; the weight of the evidence; and the danger to the community support detention. Therefore, the defendant shall remain detained without bail pending trial.

**SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of March, 2020.

                                                 s/Pedro A. Delgado-Hernández
                                                 PEDRO A. DELGADO-HERNÁNDEZ
                                                 United States District Judge